UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Karl Sicuso,

    Plaintiff,

v.                                      Case No. 17-13938

Carrington Golf Club, LLC, Theodore       Sean F. Cox
Pasko, III, and Gary Jonas,                  United States District Court Judge

    Defendants.
_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PASKO AND JONAS</u>**

Plaintiff Karl Sicuso filed this age discrimination lawsuit against a golf club and its two owner-operators. Sicuso sued under the Age Discrimination in Employment Act ("ADEA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Sicuso now moves for summary judgment, arguing that he has direct evidence that his firing was motivated by age discrimination.

After Sicuso filed his motion for summary judgment, the Court ordered supplemental briefing on the issues of which parties were "employers" under the relevant statutory definitions and whether the owner-operators of the club could be individually liable under the ADEA or ELCRA.

The Court has reviewed the briefing on Sicuso's motion and the supplemental briefs. Because the Court concludes that oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. *See* E.D.Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

The Court concludes that, although Sicuso has produced direct evidence of age discrimination, he is not entitled to summary judgment because there is a genuine issue of material

1

fact as to whether his termination resulted from age discrimination. The Court further concludes that, based on the parties' supplemental briefing, Sicuso's ADEA claims against Pasko and Jonas are foreclosed as a matter of law. Thus, the Court will deny Sicuso's motion for summary judgment and will grant summary judgment in favor of Pasko and Jonas on the ADEA claim.

## BACKGROUND

In February 2016, Plaintiff Sicuso began working as a cook and member of the kitchen staff at Defendant Carrington Golf Club, LLC. Def.'s Counter Statement of Disputed Facts, ¶ 1, 6. (ECF No. 27). The Club was owned by Defendants Pasko and Jonas. *Id.* at ¶ 2. Jonas managed the Club's restaurant, and Pasko managed the golf course. *Id.* at ¶ 3; Pasko Dep. 8:14-22, May 30, 2018 (ECF No. 26-3, PageID 451). Jonas was responsible for personnel and management decisions within the restaurant, including the decision to hire Sicuso. Def.'s Counter Statement ¶ 4, 5.

Sicuso's tenure at the Club was short-lived. On April 5, 2016, Jonas fired Sicuso. *Id.* at ¶ 7. At his deposition, Jonas described who was involved in the decision to terminate Sicuso:

> Q. Who was responsible for firing him?
>
> A. I was.
>
> Q. Anyone else?
>
> A. No.
>
> Q. Did you ask for and obtain Mr. Pasko's approval of terminating Mr. Sicuso's employment when he was terminated?
>
> A. No. I think we were in agreement through general conversation with the employees that were training him, and I just think we agreed to it.

Jonas Dep. 7:13-22, May 30, 2018 (ECF No. 28-4).

2

Sicuso was sixty years old when he was fired. Def.'s Counter Statement ¶ 8.

The next day, Sicuso met with Jonas to discuss why he was fired. Unbeknownst to Jonas, Sicuso recorded their conversation:[1]

> Sicuso: Hey, Gary. How are you? Nice to see you. Hey, the only reason I wanted to come talk to you is because – the only reason I wanted to come and talk to you is because I know there were some situations in there that James got upset with, and I told, I think, your wife, I says – what was your wife's name?
>
> Jonas: Val.
>
> Sicuso: I said, "Val," I said, "You're using olive oil on the grill at $22 a gallon. Don't you think you should use, like, a $3 bottle of vegetable oil to clean it?" And I guess Val told James. James got a little bit upset with it.
>
> Jonas: He did.
>
> Sicuso: Yeah he got a little upset with me and said, "Don't tell 'em that. I'm just going to use olive oil and that's what I'm going to use." I said, "okay." And then just different things, and I just thought that to me – you know, and I was trying to help him and throw different ideas at different things, and he just was like sticking to one way. And I was just suggesting. I wasn't –
>
> Jonas: I know
>
> Sicuso: You know, like, on the dishes. I said "We've always had, like, a tub with,

---

[1] Those portions of the conversation that Sicuso points to as evidence of age discrimination are emphasized.

like, a soap sanitizer next to it, so when you're rinsing the dishes off, you're not just scrubbing water against dirt. You're using a detergent to get it off and then you put it in the thing and go through."

"No, no, no, no. Just scrub the hell out of it," da, da, da.

"Okay." You know, just different things like that. And I just think that – you know, I just wanted to let you know, other than that–

Jonas: Well, you know, I feel like I kind of done those things to you. The reason I like an older person that has some experience is most people we hire in here either have bad experience or none. They're young. Ken has a lot of experience but he's a hard guy to manipulate around at times. You pretty much have to do what he wants to do regardless.

So, yes, I said to you and I said to them, "The guy's been around a while. He's going to have things to say. He's going to have ideas. This is what he has to say."

People don't like that. In general, people don't like being told. They want to think that they think of everything. Honestly, James has never said anything bad about you.

Sicuso: What do you mean? That doesn't fit in, though, I don't think.

Jonas: **When you first came here, before we even hired you, I said that the problem is it's a young bunch of people and you're an older guy. Sometimes that don't work. Why do I know that? Because I've tried it before.**

| | |
|---|---|
| Sicuso: | **So basically, the age –** |
| Jonas: | **It's a generational difference.** |
| Sicuso: | **Right.** |
| Jonas: | **They wouldn't want me down there, I'm sure of that, for many reasons, because I'm one of 'em. You and I are from a different generation. We do things differently. So these Millennials today –** |
| Sicuso: | **What do you mean by a different generation, though? Because we're older?** |
| Jonas: | **Yeah. We're older, we have different values, we have different ways of looking at things.** |
| Sicuso: | **So kind of like our age difference, we just don't fit in.** |
| Jonas: | **That's like I told you. I gotta see if you fit in down there. It's nothing personal to do with you.** We had another guy that was down there that was 60 years old. Unfortunately, his health got really bad and he needed to leave. |
| Sicuso: | Yeah. Somebody said something about my health or something. My health was bad or something. My health ain't bad. |
| Jonas: | They said you had some difficulty bending over and doing some things. |
| Sicuso: | No. I just told them that I had surgery for – |
| Jonas: | I don't want to get into the minutiae. |
| Sicuso: | I understand. I don't think you're the bad guy. I think you're a nice guy. |
| Jonas: | I don't want you to walk away from here thinking, that fucker. **I've got a kitchen down there, and those people I have in there are the only kind** |

5

| | |
|---|---|
| | **of people I'm going to get.** |
| Sicuso: | Only young kids like that. |
| Jonas: | Yeah. But then I've got the chance of getting older people who have some experience who are looking to make a few bucks. But now that chemistry has to work. Because if it doesn't work, then I'm in trouble. I've got this person saying – |
| Sicuso: | **So you think its probably the age difference.** |
| Jonas: | **I think that's probably a big part of it, from day one. I had an older woman in here. She wasn't as old as you and I. I'm a lot older than you.** |
| Sicuso: | **Right.** |
| Jonas: | **But she was older like us. She's been around kitchens all her life. She had certain ways about her. She didn't fit in.** She wasn't like you. She didn't try to be (inaudible). She would say, "that's wrong. Don't do it that way. There's a better way to do it." |
| Sicuso: | Well, I did everything they told me to do. As a matter of fact, I would mop floors and do the dishes. Those guys would disappear. |
| Jonas: | I know. Different work ethic.. |
| Sicuso: | And they were – a lot of times I'd go over there and, I'm not kidding 'ya, they were taking towels and whipping each other, running around the dining room. |
| Jonas: | I've already addressed them on that one. |
| Sicuso: | And I just stood there and worked. I said, "I don't want to get involved in |

| | |
|---|---|
| | this." What did he say about that? |
| Jonas: | He didn't say shit because I didn't give him an opportunity. If you told me that happened, I believe you. |
| Sicuso: | You need cameras in there. |
| Jonas: | That's what I told 'em. I don't want to spend a thousand bucks for cameras, but if I got to have somebody coming in here telling me you guys are running around snapping towels, then I'll have a camera, and the next towel I see snapped, you're gone. |
| Sicuso: | I mean, it's a circus in here; I'm telling you. I shake my head. And I think that's why they just said, you know – |
| Jonas: | No. No. That was never said. That was never – there was never – |
| Sicuso: | Well, who mentioned that I didn't fit in, though? Who said that? |
| Jonas: | Basically, those are my words. Those are my words. They're telling...I got notes. Do you really want to hear the minutia? |
| Sicuso: | Yeah. |
| Jonas: | Okay. "Hard time getting down to get things out of the freezer in the kitchen. Has a hard time listening to directions. Wants his own way." |
| Sicuso: | That's not ture. |
| Jonas: | "Cannot keep up pace during busy time. Talks entirely too much." |
| Sicuso: | Talks entirely too much? I'm the one who stays quiet. I'm the one that stays quiet |
| Jonas: | **Yeah. Right, wrong, or otherwise, it still boils down to fitting in with that** |

| | |
|---|---|
| | **group of people. Do I have a lot of work to do down there? You're goddamn right I do.** |
| Sicuso: | Fitting in with the younger crowd? |
| Jonas: | Yes. You and I, people like us, march to a different drum. |
| Sicuso: | Right. |
| Jonas: | I keep articles here, how to work with Millenials, how to motivate them. Makes it sound like they're from another goddamn planet. That's what they make it sound like. |
| Sicuso: | Because of the young kids, it's hard for older people to click together. They don't like to see older people maybe in there or something. |
| Jonas: | **Yeah. Plus, I think, innately, younger people want to respect older people. They want to. They're not any good at it, but they want to respect them. Then they have a person come in there and they feel like, well, I gotta respect this person. I can't be myself with this person. And I think that where the – it's not a big deal, but if that chemistry ain't right as a group, I got a problem.** |
| Sicuso: | All right. No problem. I respect you and your wife. I think you guys are good people. |
| Jonas: | The biggest problem we have here – here, if I had my way – |
| Sicuso: | But I'm glad I talked to you personally. |
| Jonas: | If I had my way, I'd have one pizza oven with one employee in another building, one pizza oven, and I'd have a guy like you. I'd have an older guy |

|         | who works, does what he has to do, be friendly with the folks, blah, blah. But you got a bunch of them young people together – |
|---------|---|
| Sicuso: | It's funny. Like, that list right there? If I was to make a list, it'd be ten pages long. Talk about whipping and this and that and laughing and running around and disappearing, and talk about talking a lot? But, anyway, okay. I'll be in tomorrow to pick up –. |
| Jonas:  | That's why I didn't want to read these things. They don't mean that much. What I need is chemistry. |
| Sicuso: | Right. |
| Jonas:  | And the chemistry don't work. |
| Sicuso: | Yeah. |
| Jonas:  | **You're about the third or fourth older person I've had, and they – right, wrong, or otherwise, they don't like it.** |
| Sicuso: | Right. |
| Jonas:  | Are they doing things they shouldn't be doing? Hell, yeah. |
| Sicuso: | Okay. |
| Jonas:  | – yesterday – you didn't mention any names, but when I read it to one of them I said, just think about in high school. These things in high school, you'd be gone. You're a man. You're out of school. Work like a man You know I'm not going to take this shit. You're right; I gotta put a camera back there. |
| Sicuso: | Yeah. Yeah. |

| | |
|---|---|
| Jonas: | And I told them, if I put cameras back there, you aren't gonna like me. |
| Sicuso: | I hear you, because you can get on your phone and see what's going on. |
| Jonas: | If I get cameras, I could play it on my computer. |
| Sicuso: | Yeah. Or you can get it on your phone. |
| Jonas: | I'd call. Hey what are you doing? I'd get on their asses. |
| Sicuso: | All right. Well, thank you very much, sir. |
| Jonas: | All right, Karl. You need a recommendation, we'll be here. |
| Sicuso: | All right. Thank you. |
| Jonas: | You bet. |

Jonas Dep. 20:21-32:13 (ECF No. 28-4, PageID 560-571)

On May 24, 2016, Sicuso filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which found reasonable cause to believe that violations of federal law had occurred. (ECF No. 1-1, PageID 9). The EEOC could not reach a settlement with Defendants but issued a Notice of Right to Sue letter to Sicuso. *Id.* Sicuso timely filed his lawsuit on December 6, 2017. (ECF No. 1).

In his Complaint, Sicuso named the Club, Jonas, and Pasko as defendants, and alleged two counts of age discrimination—one under the ADEA and one under the ELCRA.

During discovery, Jonas described his intentions during the recorded conversation:

"I was trying to soften the blow of terminating somebody. I had compassion for Mr. Sicuso, and I just thought it was the kind thing to do. And I was trying to understand the situation. I was just trying to make him feel a little bit better."

Jonas Dep. 38:6-38:12.

At Pasko's deposition, he testified that he had received negative reviews of Sicuso's

performance. Pasko Dep. 14:24-18:14.

In his motion for summary judgment, Sicuso argues that the recorded conversation is direct evidence of age discrimination and that Defendants have admitted their violations. In response, Defendants argue that the recorded conversation actually shows several legitimate reasons for termination, and that Jonas and Pasko further explained the rationale for Sicuso's firing at their depositions. In reply, Sicuso argues that Defendants admitted that the alleged legitimate reasons were "small," and that to disregard Jonas's recorded statements would be to endorse a "just kidding" defense.

## ANALYSIS

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

### I. ADEA Claims

### A. The Recorded Conversation is Direct Evidence of Age Discrimination.

The ADEA prohibits employers from discriminating based on age. 29 U.S.C. § 623. To prove unlawful disparate treatment, as Sicuso attempts to do, he must offer evidence that the

employer's adverse action would not have been taken against him but for his age. *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Cross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). "[I]t is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather the ADEA's 'because of' language requires that the plaintiff prove by a preponderance of the evidence...that age was the 'but-for' cause of the challenged employer decision." *Scheick v. Tecumseh Public Schools*, 766 F.3d 523, 529 (6th Cir. 2014). "[A] plaintiff who alleges employment discrimination under the ADEA may bring a claim using either direct or circumstantial evidence." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 305 (6th Cir. 2016). Here, Sicuso purports to offer direct evidence of age discrimination—his recorded conversation with Jonas.[2]

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In other words, direct evidence is "evidence [that], if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530. "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to

---

[2]Because Sicuso purports to offer direct evidence, the *McDonnell Douglas* burden-shifting framework, which dominates most employment discrimination cases, does not apply here. *See, e.g. Brewer v. New Era, Inc.* 564 F.Appx. 834, 840 (6th Cir. 2014) ("In contrast to direct evidence, when a plaintiff bases her case on indirect evidence...we apply the burden-shifting framework set forth in *McDonnell Douglas*."). In the past, courts have applied a different burden-shifting test to direct-evidence cases. *See e.g. DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (when a plaintiff establishes a claim of discrimination through direct evidence, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive."). But, the Supreme Court abrogated this direct-evidence burden-shifting framework in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). *See Scheick*, 766 F.3d at 529; *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009). Thus, in this case, the burden remains with Sicuso throughout.

12

discriminate on the basis of some impermissible factor." *Umani v. Michigan Dept. Of Corrections*, 432 Fed.Appx. 453, 458 (6th Cir. 2011).

In age discrimination cases, statements allegedly showing an employer's bias are evaluated by considering four factors: (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous, or isolated remarks; and (4) whether they were made proximate in time to the act of termination. *Peters v. Lincoln Elec*. Co. 285 F.3d 456, 477-478 (6th Cir. 2002). None of these factors is individually dispositive and all must be evaluated together, along with all of the circumstances of the case. *Id*. at 478.

Here, the first, second, and fourth factor weigh heavily in favor of finding that Jonas's statements during the recorded conversation are direct evidence of age discrimination. As the supervisor of the Club's restaurant, Jonas was a decision-maker responsible for firing Sicuso and the statements were directly related to his decision-making process. Further, the conversation occurred the day after the firing, so the statements were proximate in time to the termination.

The second factor is a closer question. Jonas never explicitly stated that he fired Sicuso because he wanted hire someone younger. *Cf. Scheick*, 766 F.3d at 531 (finding that a superintendent's statement to a fired principal that "they want someone younger" constituted direct evidence of age discrimination). But he did cite a "generational difference" and stated that an age difference was a "big part" of the reason that Sicuso was fired. When Susco asked, "What do you mean by different generation though? Because we are older?" Jonas replied "Yeah. We're older, we have different values, we have different ways of looking at things." Jonas talked about the need for

13

chemistry in the kitchen and how his younger workers do not get along with older people, including Sicuso and several other former employees. Jonas also talked about his previous experience hiring older employees for the kitchen, and how they did not work out either.

Jonas's statements may not constitute blatant age discrimination, but they are "more than merely vague, ambiguous, or isolated remarks." Therefore, the second factor weighs in favor of a finding that Jonas's statements during the recorded conversation are direct evidence of age discrimination.

Thus, considering all the *Peters* factors and all other circumstances, the Court concludes that Jonas's statements during the recorded conversation are direct evidence of age discrimination. .

**B.    There is a Question of Material Fact as to whether Age Discrimination was the But-For Cause of Sicuso's Termination.**

The above conclusion does not dictate the outcome of Sicuso's motion on his ADEA claims. The current posture of this motion is unusual for an employment discrimination case because the employee, not the employer, has moved for summary judgment. Luckily, Sixth Circuit precedence provides guidance on how the Court should consider an employee's summary judgment motion when it is supported by direct evidence.

The Sixth Circuit has recognized that, when a defendant-employer moves for summary judgment, "direct evidence of age discrimination [offered by the plaintiff-employee] may not always be sufficient to create a question of fact for trial in the ADEA context." *Scheick*, 766 F.3d at 532. The inverse of this conclusion must also be true: when a plaintiff moves for summary judgment, direct evidence may not always be sufficient to foreclose questions of fact for trial. Rather, when deciding an employee's motion for summary judgement on an ADEA claim, the question must be whether the evidence, taken as a whole and in the light most favorable to the employer, is sufficient

to permit a rational trier of fact to conclude that age was not the "but-for" cause of the challenged employment decision. *See Id.; Gross*, 557 U.S. at 178.

Defendants argue that legitimate reasons support the decision to fire Sicuso. During the recorded conversation, Jonas read a list of Sicuso's shortcomings as an employee: "Hard time getting down to get things out of the freezer in the kitchen," "Has a hard time listening to directions," "Wants his own way," "Cannot keep up pace during busy time," "Talks entirely too much." Sicuso argued with other staff members about dish washing procedures and the use of olive oil to clean the grill. Jonas highlighted the importance of chemistry in the kitchen, and implied that Sicuso was not a good fit. Pasko also testified that other employees had told him that Sicuso "couldn't do what was needed to fill the position" and provided examples. (e.g. lifting the dough out of the bowl, dough making, getting into coolers underneath the cook line, etc.). Pasko Dep. 15:6-15:15.

Further, at Jonas's deposition, he testified that Sicuso was fired because "[h]e just couldn't perform the function." Jonas Dep. 9:5-9:12.

To be sure, Jonas and Pasko's proffered explanations are undercut by Jonas's own recorded statements. He repeatedly described the proffered reasons as "minutae," and when challenged about their accuracy, he expressed his indifference. Jonas Dep. 28:16-18 ("Right, wrong, or otherwise, it still boils down to fitting in with that group of people."). He also stated that the reasons "don't mean that much." Jonas Dep. 30:19-30:20.

But Jonas offers an explanation for why he highlighted the age/generational issue in his post-termination meeting with Sicuso. He contends that he did not want to hurt Sicuso's feelings. Jonas testified that he was "trying to soften the blow of terminating somebody." *Id.* at 38:8-38:12. He "had

15

compassion for Mr. Sicuso" and "thought it was the kind thing to do." *Id.* Presumably, Jonas believed that Sicuso would feel better about the termination if he thought it was because of something out of his control—his age relative to his co-workers.

Thus, Defendants have presented a plausible explanation for the alleged discriminatory remarks and evidence upon which a reasonable jury could conclude that age discrimination was not the "but-for" cause of Sicuso's termination. Essentially, this case turns on whether or not a jury finds Defendants' explanation and testimony to be credible, in light of the recorded conversations. Thus, the Court will deny Sicuso's motion for summary judgment as to his ADEA claims.

## II. ELCRA Claims

Generally, "ELCRA claims are analyzed under the same standards as federal ADEA claims." *Geiger*, 579 F.3d at 626. However, "[i]n contrast to the ADEA's 'but-for' causation burden, under the ELCRA, a plaintiff must ultimately prove that the defendant's discriminatory animus was a 'substantial' or 'motivating factor' in the decision." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir. 2011) (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 666 N.W.2d 186, 192-93) (2003)).

Sicuso's ELCRA claims present genuine issues of material fact for the same reasons that his ADEA claims do. The recorded conversation is evidence upon which a jury could conclude that age was a substantial or motivating factor in the decision to fire Sicuso, but Jonas and Pasko have testified that he was fired only because he could not perform his duties. This is a factual dispute for the jury. Thus, the Court will deny Sicuso's motion as to his ELCRA claims.

## III. Individual Liability for Pasko and Jonas

Upon review of Sicuso's motion and the Defendants' response, the Court determined that

16

there was a question as to whether Pasko and Jonas could be individually liable under the ADEA or the ELCRA. Pursuant to Fed. R. Civ. P. 56(f), the Court gave the parties notice and a reasonable time to respond to these issues, so that it could determine whether Defendants are entitled to summary judgment on these claims in their individual capacity. The Court ordered supplemental briefing on three questions:

1. At the time of the alleged discriminatory act, which Defendant, or group of Defendants, was Plaintiff's "employer," as that term is defined by (1) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, (2) Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et seq.*, and (3) relevant case law interpreting these statutes?

2. Can Defendants Pasko and/or Jonas be individually liable under the ADEA? In addition to citing evidence and relevant legal authority, explain if and how *Wathen v. General Elec. Co.*, 115 F.3d 400, 406 & n.6 (6th Cir. 1997) impacts your answer. *See also, e.g., Muhammad v. Silis Cummis & Gross P.C.*, 621 Fed.Appx. 96, 98 (3rd Cir. 2015).

3. Can Defendants Pasko and/or Jonas be individually liable under the ELCRA? In addition to citing evidence and relevant legal authority, explain if and how *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 697 N.W.2d 851, 859 (2005) impacts your answer.

(ECF No. 31)

The parties briefed these issue pursuant to the Court's order. (ECF Nos. 32 and 33).

**A.  Sicuso's "Employer"**

The ADEA and ELCRA only apply to Sicuso's "employer." As described below, Michigan courts have interpreted ELCRA's definition of employer broadly by including fellow employees and supervisors who act as the employer's agent. Federal courts have excluded these categories of people from the ADEA's definition. The parties agree that Carrington Golf Club was Sicuso's employer under both the ADEA and the ELCRA. (ECF No. 32, PageID 677 and ECF No. 33, PageID 793). Thus, the question becomes whether Pasko and Jonas can be individually liable

17

because they fall within the relevant statute's definition of "employer."

B.   **Individual Liability under ADEA**

The ADEA does not provide for individual liability for supervisors or agents. *See Wathen v. General Elec. Co.,* 115 F.3d 400, 406 & n.6 (6th Cir. 1997*)* (holding that Congress did not intend individuals to face liability under Tile VII's definition of "employer" and that, because the ADEA uses "essentially the same" definition, the same analysis applies.); *See also, e.g., Muhammad v. Silis Cummis & Gross P.C.,* 621 Fed.Appx. 96, 98 (3rd Cir. 2015); *Horwitz v. Bd. of Educ. of Avoca Scho. Dist. No. 37*, 260 F.3d 402, 403 n.4 (7th Cir. 2001); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674 (5th Cir.2001); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir.1995).

Thus, as a matter of law, Pasko and Jonas cannot be individually liable for an ADEA violation because they were not Sicuso's employer, as defined by that statute. Sicuso concedes this point in his supplemental brief. (ECF No. 32, PageID 679). The Court will grant summary judgment in their favor on the ADEA claims.

C.   **Individual Liability under ELCRA**

The ELCRA imposes individual liability if the person who committed the discriminatory act was acting within his authority as the employer's agent. *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 697 N.W.2d 851, 859 (2005). "'Agents' are persons to whom the employing agency delegates supervisory power and authority over subordinates ... An agent can be held directly and individually liable if he engaged in discriminatory behavior in violation of [ELCRA] while acting in his capacity as the victim's employer." *Elezovic v. Bennett*, 274 Mich.App. 1, 15, 731 N.W.2d 452 (2007).

Here, by Jonas's own admission, he was acting in his capacity as supervisor of the restaurant when he committed the allegedly discriminatory act. Jonas Dep. 7:13-22; Def.'s Counter Statement

18

¶ 4, 6. Thus, Jonas may be individually liable under the ELCRA if he is shown to have discriminated against Sicuso on the basis of age.

Pasko's role is less clear. Although Jonas clearly hired, supervised, and fired Sicuso, Jonas testified that, prior to the termination, he and Pasko were "in agreement through general conversation with the employees that were training him" and that the two "agreed to it." Jonas Dep. 7:13-22. This statement seems to imply that Pasko had some authority over Sicuso and some participation in the decision to fire him. Thus, there appears to be a genuine issue of material fact as to whether Pasko was Sicuso's "employer" under the ELCRA, and, if so, whether he decided to fire Sicuso because of his age. Thus, the Court concludes that neither Jonas nor Pasko are entitled to summary judgment on the ELCRA claims against them in their individual capacities.

## CONCLUSION AND ORDER

For these reasons, the Court DENIES Plaintiff's Motion for Summary Judgment. The Court further GRANTS summary judgment in favor of Defendants Pasko and Jonas on Plaintiff's ADEA claims. After this order, the surviving claims are the ADEA and ELRCA claims against the Club and the ELCRA claims against Pasko and Jonas.

IT IS SO ORDERED.

Dated: January 23, 2019                    s/ Sean F. Cox
                                           Sean F. Cox
                                           U. S. District Judge